We welcome you to the court, and we hope this is an enlightening experience for all of us today. We have three cases on the docket, but this is the day that we travel home, and we appreciate your attempt to adhere to the time limits, although the court may occasionally give you slack. But before you get that, take note of the yellow light, which gives you two more minutes in your argument. When the red light comes on, we ask you to conclude your argument as quickly as possible, unless you're answering a question from the court. We have also read the briefs and record excerpts. We are not familiar with the entirety of the records, so we appreciate those citations when they are appropriate. The first case of the morning is number 22-50081, United States v. Powell, and we'll hear from Mr. Gross first. Thank you, Your Honor. Good morning. My name is Michael Gross. I represent the appellant in this case, Robert Stephen Powell, on this direct appeal for the Western District of Texas, San Antonio Division. With the court's permission, I'd like to orally argue point of error one, rely upon my brief for the remaining points of error, points of error two and three, kind of jive in with point of error one, so I'll refer to them a little bit. I have reserved five minutes for rebuttal. Point of error one, the issue for this court, does Holguin-Hernandez apply to the facts of this case where, as in Holguin-Hernandez, the appellant at sentencing argued that the 3553A factors did not support prison time. In fact, at sentencing, beginning at page 1430 of the record, the court asked if Mr. Powell, the appellant, would be allocuting during sentencing, to which we said, no, Your Honor, would not because we're going to be going up on appeal. And then on the following page, 1431, the judge asked again, well, is he going to be accepting responsibility today? Because he has the opportunity, even though he pled not guilty and went to trial. And then nine pages later in the record, at page 1440, the trial judge put Mr. Powell under oath, the appellant under oath, and proceeded over the next three pages to question him under oath, many of questions to which Mr. Powell remained silent because he was going up on appeal. And then on page 1443, just before sentencing, the judge said, okay, do you have anything to say before being sentenced? And the appellant said, no, Your Honor, we're remaining silent because of the appeal. Then the judge said, again, there's been no showing of remorse and ended up sentencing Mr. Powell to the bottom end of the guidelines, 51 months, each of counts one through three, to run concurrent. Did the district judge . . . I'm sorry? Did the district judge increase the sentence because he was silent or simply did not give him a benefit for not speaking up? Our argument, Judge Ho, is because Mr. Powell was silent during sentencing. In fact, Judge Ho . . . Well, I guess here's what I'm thinking is, do you have a constitutional . . . sorry, can you hear me? No, you're fine, sir. We're in feedback, right? Yes, sir. Do you have a constitutional objection in principle to a system in which if you do speak up and show a great deal of remorse, you can get potential points off for acceptance of responsibility? Is there a problem with that system? So I, in the briefing, Judge Ho, kept away from acceptance and focused solely on lack of remorse. And in our briefing, Your Honor, we tried to keep it separate to say that we're focusing . . . Do you understand why I'm asking this, though? If you have a system in which . . . you could make the argument that any system in which you give credit for people who speak up, you're implicitly punishing those who don't. So does your theory blow up the current system? Maybe we should blow up the system. Maybe that's your point. I'm just trying to figure out what your point is. Our position, you know, Judge Ho, for instance, with acceptance that you were talking about, sir, acceptance under Holguin-Hernandez would be more akin to procedural error, like a guidelines calculation being incorrect. However, the substantive reasonableness under Holguin-Hernandez would be holding lack of remorse against the individual. In other words, there were many opportunities during sentencing when the judge was asking questions for Mr. Powell to show remorse, not just acceptance. And then the question is, if you go to trial, can you even get acceptance? But it sounded, to be fair, it sounded like the judge was open to the possibility of acceptance even though Mr. Powell pled not guilty and went to trial. But it's our position, Judge Ho, that we stayed away from acceptance of responsibility and a potential procedural error under the sentencing guidelines with acceptance and three points off as an example. We focused exclusively on the substantive reasonableness. That is the length of the sentence under Holguin-Hernandez. Did that answer your question, Judge Ho? I don't want to leave that unanswered. I'm not sure it does. I guess I'm asking sort of a more conceptual question, which is if you're a judge and you say, look, I do not want to punish anybody for being silent. That is a constitutional right. You may have made that decision for any number of reasons. But having said that, the system does provide for remorse, acceptance of responsibility, those sorts of dynamics. I need you to testify for me to be able to make that finding. I'm not demanding that you testify. I'm not going to punish you for not testifying. But I just can't give you that bonus if you don't. Is that system inherently unconstitutional? Our position, Your Honor, is that— If you don't mind, I'm just—yes or no. Is the system inherently unconstitutional? If so, then that's your argument. If not, why not? With the Mitchell angle in it and the remorse case decided by the government, we think that it's wrong for the courts to consider remorse under the 3553A factors, lack of remorse, under the 3553A factors. But we see that being a part and distinct, Your Honor, from acceptance of responsibility under the sentencing guidelines. I hope that was an answer that was— I don't want to monopolize. Go ahead. Yes, sir. Yes, sir. Let me ask to be sure. Is the evidence you have that supposedly supports this argument, the single statement by Judge Berry when he said this court sentences you again. There's been no shoring of remorse, no voluntary turning over until today. Is that— Judge, I'm so sorry. I couldn't hear the first part of that. I'm just wondering, is that the source of this argument, that those two sentences, or however you punctuate it, that was said at one part of the sentencing hearing? Is that the source of this argument, or is there something else that the judge did? We think a fair reading of the sentencing proceeding, Your Honor, throughout the sentencing proceeding— You asked several times during the sentencing hearing. All I'm asking is, insofar as you're saying that the lack of remorse was held against your client, how do we know that? And is it because of these one or two sentences in some part of the sentencing transcript in which the judge says something like that? My answer to that, Your Honor, Judge Southwick, is that Mitchell at page 329 said it may have contributed to the sentence, the lack of remorse. In our sentencing proceeding, Your Honor, the judge repeatedly asked if Mr. Powell, the appellant, was going to give any information to the judge in effect about remorse. And then when Mr. Powell didn't, the most key point is our position, Judge Southwick, is that just before pronouncing sentence, the judge at page 1443 said, Do you have anything to say before being sentenced? And Mr. Powell remained silent. And then Judge Beery, the trial judge then, went into his sentencing saying, And so, Mr. Powell, the court sentences you. Again, there's been no showing of remorse. And he proceeded to give Mr. Powell 51 months concurrent on all three counts. Wasn't that below the guidelines? It was the bottom, Judge Jones, of the guideline calculation, just like in Mitchell. Just from a practical standpoint, what is the likelihood that if we affirm the conviction and the restitution and so on, that Judge Beery would change his sentence here? My hope, Your Honor, Judge Jones, is that with points of error two and three, that we're clearly dealing with . . . I know that. I know what you're saying. But suppose your client fails and the sentence and the restitution are affirmed, this goes only to the length of imprisonment. And I'm suggesting that there's very little chance that Judge Beery would change his mind. Our hope, Judge Jones, would be that Judge Beery would consider probation again. That's what we argued in our sentencing memorandum. So he can go and make some money and not pay taxes again? Well, no. What we would probably do, Judge Jones, within the realm of possibilities, to be realistic from our standpoint, Your Honor, there would probably be a large amount paid prior to sentencing in a cashier's check towards the restitution amount or the tax loss amount. And then that could be persuasive with Judge Beery with respect to . . . and I don't mean him personally, any sentencing judge, Your Honor. It could be, we would hope, persuasive to the sentencing judge then to reconsider probation as we argued in our sentencing memorandum. You have a thought on that, Judge Jones, and I know, of course, you all read the record. But just to highlight briefly, the appellate did outstanding things in the community prior to this case coming to the court. And I'm sure the court's aware of those great things he did. We're hoping that the humanitarian award by FedEx, the helping to save the life of a person, those types of things, when combined with some added incentive for probation come time for resentencing, we're hoping we would get away from the 51 to 63 months, Your Honor. I misspoke just a little bit ago. It was not Mitchell that was bottom of the guideline range. It was Holguin Hernandez. Holguin Hernandez was looking at the 12 months at the bottom of the guidelines, and that's what the judge gave in Holguin Hernandez, and, of course, stacked those on the sentence in Holguin Hernandez. Even though trial defense counsel at sentencing requested no more time on that revocation proceeding. It's our position that a fair reading of the cases cited in our briefing and the cases cited by the government in their briefing, I did not see a case where both Holguin Hernandez and Mitchell are cited in the same case with respect to remorse. The government cited many cases that dealt with remorse that also involved Holguin. For instance, the Cruzado-Loreano case cited by the government, it was interesting in that case because there was nothing about Holguin or Mitchell in there, but it said that lack of remorse could serve both the function of disqualifying him for the reduction and as a factor in determining the length of the sentence. And, of course, length of sentence ties in exactly with Holguin Hernandez under substantive reasonableness. The length of sentence is what the court was talking about in Holguin Hernandez, and that ties in exactly with Cruzado-Loreano. The other cases cited by the government, Cotto-Mendoza, for instance, they talk about Holguin but not Mitchell. In the Box case from the Eleventh Circuit cited by the government, they talk about remorse and they cite Holguin but they don't cite Mitchell, which was telling in our position because we think that it's a viable issue. Obviously, the Mitchell case left it open for the courts to decide below that the fact that we've got the remorse issue that was not covered by the Supreme Court is open for interpretation now in light of joining it with Holguin Hernandez. In the Kippers case, remorse was cited in the Kippers case out of this court, but nothing about Holguin or Mitchell because it wasn't brought up in the briefing. And the same with the Keskis case where remorse was brought up, and again, nothing about Holguin or Mitchell, and the same in McNair. And so it's our position, respectfully, that the issue is wide open for this court to make a determination when Mitchell is joined with Holguin Hernandez in a case like this where we followed Holguin in our briefing and in our sentencing memorandum to the court. And the sentencing memorandum, of course, is at page 2454 of the record where we ask that there be no time in bureau prisons but that the court has such probation instead. And I'm going to go ahead and stop there unless the court had any questions. Okay. Did you represent Mr. Powell at trial? I did not, Your Honor. I was just wondering. But the district . . . well, let me just point out the district judge articulated other reasons for giving him a sentence of incarceration, and that included the fact that there were some other FedEx pilots in a similar situation who also went to prison. And to be fair, Judge Jones, Judge Beery did bring that up at sentencing and asked if I was aware of it. I was not at the time, still not. But I think that those factors could have easily been overcome by the positive sentencing factors that we cited in our sentencing memorandum. But yes, Judge Jones, you're accurate. Judge Beery did bring that up, Your Honor.  Thank you. Thank you, Your Honor. Mr. Davis? May it please the Court. Gregory Davis for the United States. One thing that the defense counsel fails to point out is the whole language, which is yes, Judge Statham, this is the only indication that remorse was . . . that the court was considering remorse in any way.  There has been no showing of any voluntary turning over of assets until this very day. If you read that in context, it's fairly clear, at least to me as a reader, that the court is relying on the defendant's failure to pay . . . to come into compliance with the tax laws as a reason for finding a lack of remorse. And the Eleventh Circuit in U.S. v. Box specifically held that a sentencing court can consider a defendant's failure to comply with the tax laws as a showing of lack of remorse. This, of course, in the Shanklin case, granted both of those cases are unpublished, but they do provide some information. Shanklin also recognized that remorse can be based on a failure to comply with the tax laws. I would say that one . . . the counsel was asking why the decisions we cite didn't cite Holguin-Hernandez. I would note that Holguin-Hernandez was only decided in 2020. There haven't been that many cases since 2020. So, it's unlikely that the cases that we would cite would cite both Holguin-Hernandez and Mitchell. Let me ask a question. This fellow pled guilty . . . no, was convicted in 2018, but not sentenced until 2022? That's correct. And, I suppose he was out on bail the entire time? He was remanded initially, but as time progressed, he filed a motion for release, and the government agreed that he should be released. So, he has served . . . he was incarcerated briefly, but then he was released given the pandemic and the situation there. The court asked whether or not it's likely that the district court would sentence the defendant to something less. I would . . . quoting from page 16 of our brief, at the close of sentencing, when defense counsel asked to be . . . for a delayed reporting date, the court says, quote, No, he has played this game, and he has played this court, and he has played the taxpayers of the United States for 20 years, and it's time. It's done. As far as I read it, that's a pretty clear indication that Judge Berry is not going to impose probation. Certainly not probation, and highly unlikely anything less than the 51-month term of imprisonment he received, which is the very bottom of the guideline range. I also . . . the district court also considered the factors in the great mitigation that were presented to it, and namely his generous contributions to the community. But again, quoting from our brief at page 16, the seriousness of his crimes in this case, quote, showed a different, darker side to Mr. Powell. This is not a judge who is likely to consider a lower sentence should the case be remanded for resentencing. Is this . . . I don't understand. How did . . . I guess someone expedited this appeal. It would appear so. I've never . . . unless we have an emergency motion, we rarely get something to us within three months. I was surprised as well, but I was . . . it certainly made refreshing my recollection less onerous than it otherwise would have been. Yeah, I guess that's right. Do you have any understanding as to why the sentencing was delayed so long? I know COVID was an excuse for a lot, but this was a long delay. I do not have . . . I do not know the reason that the delay was as long as it was. It certainly occurred early this year. And I think Judge Beery mentioned at the time of sentencing that this was the first proceeding in that courtroom in a couple of years. So I can't speak to why it moves slowly below and extremely quickly here. I'm not sure that there's any information in the record that would answer that question. All right. Any other questions? I do have a question about this table that sets up the restitution. I think it's at ROA 2339. I imagine you're familiar with it. It's an extensive spreadsheet that justifies the restitution amount. My clerk and I had some trouble . . . First of all, let me just make sure. This document was never submitted to the jury. It's not part of the record. This is the government's encapsulation of the record. Is that correct? That's correct. This was based on information from the IRS. Looking at . . . If you look at the Forms 4549 and the transcripts of account, the Forms 4549 gets you the exact amount for the additional exam tax assessment and the income tax withholding for all of the years in the table. For 2003 through 2007, if you do the math, which I grant you is not something we as lawyers usually like to do, you can get the exact numbers for the penalties assessed and the interest assessed for 2003, 2004, 2005, 2006, and 2007. Granted, that does not cover the other five years that are part of the table, but if you look at the 4549, you're within $3,000. It's not perfect. I acknowledge that, but this is also . . . I mean, this isn't the Arledge case. Arledge is distinguishable because there, there were three people for whom restitution was ordered, but the government conceded that there was no proof that they were actually victims. Here, there's no dispute that the IRS was a victim of Mr. Powell's refusal to pay his taxes or file returns. So this is not Arledge, but the numbers are not exact, but we think the court is bright. The court can infer where the other numbers for penalties and interest came from. Certainly, if the court were to send this case back, there's no reason to send it back for anything other than a recalculation of restitution. Okay. So you acknowledge that if we were to try to go to the record, as we've tried, and to try to justify every step of this arithmetically, that there may be some gaps? That's correct. And your point is what, that therefore it should be sent back? Well, my point is that if you look at the 4549s, the amount that he was told was restitution is 3,000 more than the amount in the table that he was actually ordered to pay. Okay. So your theory is that the discrepancies exist, but they actually cut in his favor. We, there are certain, certainly the, as the current state of the record, what is in the record, you can't get the exact numbers for interest and penalties for five of the years of, that are in the table. But if you look at the total for all 10 years, the amount that you look, if you look at the 4549, it shows that, it says that restitution is $3,000 more than he's actually been ordered to pay by the district court. Okay. So bottom line, government acknowledges there's a discrepancy between this chart and the record, but that net-net, it ultimately favors, the discrepancy favors Powell, and so presumably he would not want this sort of vacatur to be even more accurate than it is now. Correct. But obviously if the court chooses to remand, we ask only that it be a limited remand just as to the restitution amount, not for a full sentencing. Based on what I discussed with Judge Jones, I don't think there's any indication that the district court would lower the defendant's sentence by any amount, based on a small discrepancy in restitution. Okay. Okay. Thank you very much. All right. We would ask that you affirm. Mr. Gross. One of the reasons for the delay. Do we want to address this since we just talked about this chart? Yes, sir. Do you agree that there's no need to send it back since, if anything, it would make it worse for your client if they double-check the restitution numbers? The restitution number is the reason for the delay between guilty finding and sentencing is our CPA put together our chart that's in the reply brief at page 2. And in the reply brief, Your Honor, at page 2, we show how there was payments made or taken from Mr. Powell in the total amount of approximately $844,000. If you may, just a yes or no. If the court determines, based on a thorough review of the record, that there is a discrepancy between this chart and the actual record, of course it's quite possible that the discrepancy cuts against your client. It's possible the discrepancy cuts in favor of your client. Yes, sir. Are you asking for us to send it back? Yes, sir. And it's our position, Your Honor, that Judge Ho, that if it goes back and Judge Berry sees the restitution amount, our chart, for instance, on page 2, shows exactly how much was taken from Mr. Powell by the government, either with the SFRs, the substitute for returns. Those FSRs show that there was a lot of money that Mr. Powell paid in this case, Your Honor. You're saying that there are offsets that the government's not taking account of and that would ultimately inure to a lower restitution amount if remanded. Exactly, Your Honor. And then if the court, on remand, were to reconsider the restitution amount and if the court were able to go with our chart on page 2 of our reply brief that was admitted into evidence without objection, if we were to pay the balance of that with a cashier's check to the clerk, we would have a very good opportunity of either probation or a sentence less than the guidance. Why didn't you do that before you were sentenced? I'm sorry, Your Honor? I say, why didn't he do that before he was sentenced? We were not in a position at that point, Judge Jones, to make a good determination as to what rights to waive with respect to his appeal. I had not yet read the transcripts. I didn't know what errors there were at trial, Your Honor. That's a great question, but I wasn't aware of what exactly happened at trial. So when did you offer this counter table? I'm sorry, Your Honor? When did you offer this counter table? At sentencing, Your Honor. At sentencing, so it's preserved. But they say that this treated your tax liability as if Powell was married filing jointly? Yes, Your Honor, because of the SFRs. And that it didn't account for the fact that this claims business losses that were not available? We stayed away from that, Your Honor, just because we didn't want to get into any kind of contest with the government as to what would be realistic deductions or not. So we tried to stay away from that, Your Honor. So that's not in this table? I don't have deductions in there that I recall, Your Honor. But as an example, Your Honor, on column F, just as an example, on column F of our exhibit that went on page 2 of our ply brief, you see the original balance due in 1995 of $4,998. I apologize for the small print, Your Honor. Right underneath that, Your Honor, from 96 to 98, you see that there was a refund due in the amount of $69.46 because you have $19.61, $35.68, and $14.17 that were refund due. And I don't mean to get into the numbers especially. But it could have been applied to what was owed. But did your CPA treat these on the basis of married filing jointly rather than single taxpayer? When we got to the SFRs, that's correct, Your Honor. What are the SFRs on this table? The SFRs, Your Honor, began years 2002 through 2009. The evidence showed there were no returns filed, either correct or frivolous, so the SFR procedures were used by the Revenue Service to calculate. But you're exactly right, Judge Jones. My CPA used the married filing jointly. Why? I'm sorry? Why? Because had Mr. Powell done that like most folks would have, it was our position Mr. Powell, had he filed the taxes, would have filed jointly, married jointly. Yeah, but you have to request that, right? And you're exactly right, Your Honor. You're exactly right. If we take that issue, I'm asking this just to isolate what the errors are. So I grant your point that there's the marriage filing option. Yes, sir. That aside, if that was not available to him for some reason, any reason to remand or is that really the reason? There is, Your Honor, because of the overwithholding from 2014 to 2018 that's in our table. Thank you. Thank you all so much for the opportunity today. All right. Thank you.